**THE RICHMAN LAW GROUP**
Kim E. Richman
krichman@richmanlawgroup.com
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292

*Additional Plaintiffs' counsel listed on
signature page*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **NATALIA GONZALEZ and ANNALLEE DODD, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**COSTCO WHOLESALE CORPORATION and DOES 1-5,**<br><br>**Defendants.** | Case No. 1:16-cv-02590-NGG-JO<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Natalia Gonzalez (a New York resident) and Annallee Dodd (a California resident) (collectively, "Plaintiffs"), individually and on behalf of other similarly situated individuals, allege the following Class Action Complaint against Defendant Costco Wholesale Corporation and its affiliates, named herein as "Does 1-5," known and unknown subject to subsequent discovery (collectively referred to herein as "Costco" or "Defendant"), involved in packaging, marketing, and distributing the line of products described herein, specifically the "Kirkland Signature" line of "environmentally responsible" cleaning products (collectively referred to herein as the "Products," *see infra* ¶ 4), upon personal knowledge as to themselves and their own acts and upon information and belief—based upon, *inter alia*, the investigation made by their attorneys—as to all other matters, as follows:

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs, on behalf of a class of similarly situated individuals, against Defendant seeking redress for Defendant's unjust, unfair, and deceptive practices in misrepresenting the environmental benefits of the Products in violation of New York, California, and common law.

2.      In recent years, consumers have become significantly more aware of and sensitive to the toxicity and impact of household products on the environment. Consumers seek, and will pay a premium for, products that are safe and responsibly made, including products that will not negatively affect the environment.

3.      As a result, demand has increased for "green" products that are naturally derived, environmentally sound, and non-toxic.

4.      Costco packages, markets, distributes, and offers for retail sale a line of "environmentally responsible" cleaners under its private-label "Kirkland Signature" line. Costco sells these Products at its hundreds of "members only" stores throughout the United States. The Products are also available, to a lesser extent, in retail stores outside of Costco, as well as through online retailers like Amazon. The Products at issue are Kirkland Signature Premium Liquid Dish Soap ("Signature Dish Soap") and the Kirkland Signature Premium Laundry Detergent ("Signature Laundry Detergent") (collectively, the "Products").[1]

5.      Costco labels the Products as "environmentally responsible,"[2] alongside numerous additional representations and imagery touting the purported "green" properties of the Products.

6.      The Products' "environmentally responsible" labels are accompanied by claims that the Products are made from "naturally derived ingredients," "Recognized for Safer Chemistry," "safer for the planet," and made according to a "biodegradable formula."

---

[1] Discovery may reveal that additional products are similarly misrepresented, and Plaintiffs reserve the right to add them to the definition of "Products."

[2] Prior to 2015, Costco marketed the Products as "environmentally friendly" instead of "environmentally responsible." This earlier version of the label included identical imagery and many of the same representations as found on the later version. Though this action concerns the "environmentally responsible" Products, Plaintiff Gonzalez also purchased the Products labeled as "environmentally friendly."

CLASS ACTION COMPLAINT

7.      Additionally, Costco fills the Products' labels with imagery—such as icons resembling recycling symbols, water drops, and leaves, and a central image of a leaf floating in pristine water—that is highly suggestive of "green," environmentally responsible products.

8.      Thus, Costco's representation that the Products are "environmentally responsible"—especially when viewed in the context of the additional representations and suggestive label imagery—creates an impression that the Products are natural, safer, and environmentally sound alternatives to traditional dish soaps and detergents.

9.      Unfortunately for consumers, this impression is not accurate. As detailed herein, Defendant's Products are not "environmentally responsible" as advertised on the Products' labels.

10.     In fact, the Products contain unnatural, harmful, and toxic chemical ingredients, including sodium hydroxide, sodium lauryl sulfate ("SLS"), lauramine oxide, and methylisothiazolinone ("MI"). Reasonable consumers do not expect such ingredients to be in products labeled "environmentally responsible."[3]

11.     Consumers lack the ability to test or independently ascertain the accuracy of a cleaning product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a product's characteristics or ingredients.

12.     Costco intends for consumers to rely upon their dish soap and laundry detergent product label representations, and reasonable consumers do in fact so rely.

13.     As a result of its "environmentally responsible" misrepresentations, Costco was able to sell the Products to potentially hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

14.     Costco's misrepresentations and omissions violate state and federal law as detailed more fully below.

15.     By deceiving consumers about the nature, quality, and/or ingredients of the

---

[3] The Products also contain methylchloroisothiazolinone ("MCI") and benzisothiazolinone ("BIT"). These preservatives, along with MI, are associated with contact allergic reactions and other sensitizations among a significant proportion of the population. The presence of these contact allergens belie Defendant's label representation that the Products are "mild on skin," further evidencing the misleading nature of the Products' labels.

CLASS ACTION COMPLAINT

Products as detailed herein, Costco was and is able to sell, or sell more of, or charge more for, the Signature Dish Soap and Signature Laundry Detergent Products than it would be able to do if the Products were accurately labeled. Costco was also motivated to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

16.     Plaintiffs bring this action to stop Costco's misleading practices.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over the parties in this case. Plaintiff Natalia Gonzalez is a citizen of Glen Oaks, New York. Defendant Costco purposefully avails itself of the New York consumer market, and distributes the Products to locations and throughout New York, where the Products are purchased by thousands of consumers every day. Defendants Does 1-5 are likewise involved in the manufacture, distribution, or sale of the Products throughout New York and within this County.

18.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are more than $5,000,000.00 in the aggregate, exclusive of interest and costs.

19.     Venue is proper in this District under 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

### Individual Plaintiffs

20.    Plaintiff Natalia Gonzalez is an individual consumer who, at all times material hereto, was a citizen of Queens County, New York.

21.    On multiple occasions in 2015, Plaintiff Gonzalez purchased Signature Dish Soap and Signature Laundry Detergent labeled as "environmentally responsible" from the Costco outlet located in Queens, New York.

22.    Plaintiff Gonzalez viewed and relied upon Costco's "environmentally responsible" representations when purchasing the Products.

23.    Viewing the "environmentally responsible" representation in the context of the additional representations and imagery on the label, Plaintiff Gonzalez understood "environmentally responsible" to mean that the Products offered natural, safer, and environmentally sound alternatives to traditional dish soaps and detergents.

24.    Had Plaintiff Gonzalez known that the statements she relied on were false, misleading, deceptive, and unfair, she would have not purchased the Products. In particular, Plaintiff Gonzalez would not have purchased the Products if she knew they contained unnatural, harmful, and toxic chemical ingredients.

25.    If Defendant's misleading conduct were remedied, *i.e.,* if the Products were altered to conform to the representations on the labels, Plaintiff Gonzalez would consider purchasing the Products again.

26.    Plaintiff Annallee Dodd is an individual consumer who, at all times material hereto, was a citizen of San Francisco County, California.

27.    In 2015, Plaintiff Annallee Dodd purchased lavender Signature Laundry Detergent from a Costco outlet located in South San Francisco, California.

28.    Plaintiff Dodd viewed and relied upon Costco's "environmentally responsible" representations when purchasing the Products.

29.    Viewing the "environmentally responsible" representation in the context of the

additional representations and imagery on the label, Plaintiff Dodd understood "environmentally responsible" to mean that the Products offered a natural, safer, and environmentally sound alternative to traditional detergents.

30.    If Defendant's misleading conduct were remedied, *i.e.,* if the Products were altered to conform to the representations on the labels, Plaintiff Dodd would consider purchasing the Products again.

**Defendant**

31.    Defendant Costco Wholesale Corporation ("Costco") is a Washington corporation with its principal place of business in Issaquah, Washington.

32.    Costco markets and distributes the challenged Products throughout California, New York, and the United States. The challenged Products are manufactured by The Sun Product Corporation ("Sun"), a Delaware corporation with its principal place of business in Wilton, Connecticut. Sun manufacturers, *inter alia*, "green" cleaners and detergents, which it manufacturers under Costco's directions and to Costco's specifications for ultimate sale under Costco's "Kirkland Signature" private label line of products.

33.    Plaintiffs do not know the names and locations of the other potential defendants listed under the fictitious names "Does 1-5," who, along with the identified Defendant, are believed to be responsible for the marketing and distribution of the challenged Products throughout California, New York, and the United States.

**COMMON FACTUAL ALLEGATIONS**

34.    Seeking to profit from consumers' desire to purchase and use natural, environmentally sound, and safer alternatives to standard dish soap and detergent offerings, Defendant Costco manufactures and/or directs the manufacturing of "environmentally responsible" dish soap and detergent formulations, including the Products.

35.    Costco uniformly markets the Products as "environmentally responsible" alternatives that provide environmental benefits that traditional dish soaps and detergents do not.

6

36.    Costco labels and markets these formulations under its "Kirkland Signature" private label, and the Products are sold in the hundreds of Costco's retail stores throughout the country, through selected third-party retailers, and over the internet.

37.    The packaging for the Products misrepresents that the Products are "environmentally responsible" and suggest that they will benefit the environment in a variety of ways.

38.    The term "environmentally responsible" uniformly conveys to reasonable consumers that a product has certain benefits over conventional products—in particular, that a product is non-toxic to plant and animal life, including humans. Reasonable consumers recognize that not all natural or "naturally derived" substances are non-toxic, but they trust that when companies designate products as "environmentally responsible," the companies are doing so to convey that the products contain only non-toxic, natural substances.

39.    Thus, the Products are deceptively marketed as being uniquely positioned, in contrast to Defendant's and other companies' conventional cleaning product offerings, to provide consumers with natural, environmentally sound, and safe alternatives.

## I.    The "Environmentally Responsible" Representations.

40.    Defendant represents the Products to be "environmentally responsible," positioning this claim in the context of the additional representations and imagery suggesting that the product is naturally derived, made with bio-products, safer, gentle, and provide environmental and safety benefits that traditional dish soaps and detergents do not.

41.    At some point during the relevant time period for this class action, Costco began to use suggestive green colored packaging and market the Products, both Signature Dish Soap and Signature Laundry Detergent, as "environmentally responsible." Among the largest words on the front of the label are "environmentally responsible," implying that a consumer who chooses to

purchase the Products is acting in a manner beneficial to the environment. Examples of the "environmentally responsible" product packaging and labels are reproduced below:







CLASS ACTION COMPLAINT




42.   Defendant couples its "environmentally responsible" claims with third-party seals and icon-style designs to further portray the Products as alternatives that provide environmental and other benefits that traditional dish soaps and detergents do not.

43.   For example, the front labels of the "environmentally responsible" Products currently include an icon indicating participation in the EPA's "Safer Choice" market-based incentive program.

44.   The EPA's Safer Choice program relies on hazard analysis, rather than risk analysis, to assess product safety. While popular with many stakeholders and expedient from a resource-management perspective, hazard-based ingredient standards say little about the broader sustainability—or "environmental responsibility"—of the end-use product.[4]

45.   The front labels of the challenged Products also include several icon-style designs promoting the "environmentally responsible" Products' alleged environmental and health benefits. A blue circle with a white raindrop and "recycling"-type circular arrow touts the

---

[4] *See, e.g.*, Charles L. Franklin, "Chasing Hazards: Toxicity, Sustainability, and the Hazard Paradox," *Natural Resource & Environment* (ABA), Vol. 29, at 4 (Spring 2015).

CLASS ACTION COMPLAINT

Products' "biodegradable formula." A green circle with three white leaves states that the Products "include[] naturally derived cleaning ingredients," with "naturally derived" written larger, and bolder, than the other words.

46.     All the environmental and safety representations made on the "environmentally responsible" Products' front labels are set against a placid backdrop of a green leaf floating on a pool of water, and are designed to lure consumers who are concerned about the use of chemicals and harmful substances.

47.     The back labels of the "environmentally responsible" Products' packaging repeat many of the same representations from the front label, and add such explicit representations as "safer for the planet."

48.     These additional claims and imagery are used by Costco to strengthen the impression among consumers that the Products are "environmentally responsible," purporting to provide environmental benefits that traditional dish soaps and detergents do not.

49.     Contrary to this impression, the Products contain harmful ingredients that are not environmentally responsible or safer than traditional dish soap or detergent offerings.

50.     For instance, the Federal Water Pollution Control Act designates sodium hydroxide as a hazardous substance.[5]

51.     The International Programme on Chemical Safety states that sodium lauryl sulfate ("SLS") is "toxic to aquatic organisms. It is strongly advised not to let the chemical enter into the environment."[6]

52.     The U.S. National Library of Medicine's Toxicology Data Network lists lauramine

---

[5] *See* 40 C.F.R. § 116.4.

[6] The International Labour Organization,  International Chemical Safety Card for Sodium Lauryl Sulfate, *available at* http://www.ilo.org/dyn/icsc/showcard.display?p_lang=en&p_card_id=0502&p_version=1   (last  visited  July  17, 2017).

oxide as "Artificial Pollution Source."[7]

53.    The    EPA    specifically    lists    methylisothiazolinone    ("MI"),
methylchloroisothiazolinone ("MCI"), and benzisothiazolinone ("BIT") as "yellow triangle"
chemical ingredients—meaning that they are chemicals with "hazard profile issues" and are "*not*
associated with a low level of hazard concern for all human health and environmental endpoints*"
(emphasis added).[8] The EPA also lists MI as a pesticide and describes it as "moderately to highly
toxic to freshwater and estuarine/marine organisms."[9]

54.    Despite all of this, Costco makes the "environmentally responsible" claims on the
Products' packaging, enabling Costco to sell more of its cleaning Products than it would without
the label, and to crowd competing products from the market.

**II.    Harmful, Unnatural Chemicals in the Products.**

55.    Contrary to Defendant's "environmentally responsible" representations, the
Products contain harmful ingredients that are not environmentally responsible or safer than
ingredients found in traditional dish soap or detergent offerings. The Products' harmful
ingredients include sodium hydroxide, SLS, lauramine oxide, and MI.

**A.    Sodium Hydroxide.**

56.    Sodium hydroxide is a highly caustic and very corrosive, manufactured substance
used to neutralize acids and make sodium salts. Other common names include caustic soda and
lye.

57.    At room temperature, sodium hydroxide is a white, crystalline, odorless solid that
absorbs moisture from the air. When dissolved in water or neutralized with acid it releases

---

[7] National Institutes of Health, U.S. National Library of Medicine. Hazardous Substances Data Bank, Toxicology Data Network: Lauramine Oxide, *available at* http://bit.ly/2aTjjrK (last visited July 17, 2017).

[8]    U.S.    Environmental    Protection    Agency,    "Safer    Chemicals    Ingredients    List,"    *available    at* http://www2.epa.gov/saferchoice/safer-ingredients (last visited July 16, 2017).

[9] U.S. Environmental Protection Agency, Reregistration Eligibility Decision (RED)—Methylisothiazolinone. EPA738-R-98-012 (1998), *available at* http://archive.epa.gov/pesticides/reregistration/web/pdf/3092.pdf.

CLASS ACTION COMPLAINT

substantial heat, which may be sufficient to ignite combustible materials.

58.     Sodium hydroxide is used to manufacture soaps, rayon, paper, explosives, dyestuffs, and petroleum products. It is also used in metal cleaning and processing, oxide coating, electroplating, and electrolytic extracting. It is commonly present in commercial drain and oven cleaners.

59.     Sodium hydroxide is designated as a hazardous substance under section 311(b)(2)(A) of the Federal Water Pollution Control Act and further regulated by the Clean Water Act Amendments of 1977 and 1978.[10]

60.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical designated as a hazardous water pollutant.

**B.     Sodium Lauryl Sulfate.**

61.     Sodium lauryl sulfate is a white- or cream-colored crystal, flake, or powder with a faint odor used in general as a detergent, dispersant, and surfactant.

62.     SLS is toxic to aquatic organisms. The International Programme on Chemical Safety advises that SLS should be kept out of the environment, stating: "Do NOT let this chemical enter the environment."[11]

63.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical that international authorities have advised should not even be permitted to enter the environment.

**C.     Lauramine Oxide.**

64.     Lauramine oxide is an aliphatic tertiary amine oxide that is used mostly in hair care products as a foam builder and stabilizer, viscosity enhancer, emollient, conditioner, emulsifier,

---

[10] 40 C.F.R. § 116.4.

[11] The International Labour Org., International Chemical Safety Card for Sodium Lauryl Sulfate, *available at* http://www.ilo.org/dyn/icsc/showcard.display?p_lang=en&p_card_id=0502&p_version=1 (last visited July 17. 2017).

CLASS ACTION COMPLAINT

antistatic agent, and wetting agent.

65.     The National Oceanic and Atmospheric Administration's CAMEO Chemicals, a database of hazardous chemical datasheets, lists lauramine oxide (by its chemical name Dimethyldodecylamine-N-Oxide) as highly toxic and states runoff from dilution water may be corrosive and/or toxic and cause pollution.[12]

66.     The U.S. National Library of Medicine's Toxicology Data Network lists lauramine oxide as an "Artificial Pollution Source" and warns, "Ultimate disposal of the chemical must consider: the material's impact on air quality; potential migration in soil or water; effects on animal, aquatic, and plant life."[13]

67.     A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical designated as a highly toxic pollutant.

**D.     Methylisothiazolinone.**

68.     Methylisothiazolinone (2-methyl-4-isothiazolin-3-one, or "MI") is a powerful biocide used for controlling microbial growth in water-containing solutions.

69.     MI is neither "natural" nor "naturally derived." MI is produced, generally, by the controlled chlorination of dimethyldithiodipropionamide ("DPAM") in solvent, followed by neutralization and extraction into water.

70.     MI is an inexpensive and widely available synthetic biocidal preservative used for curbing microbial growth in water-containing solutions.

71.     As far back as the mid-1980s, MI was recognized as a contact allergen.[14]

72.     Approximately 10 years ago, MI's use in the United States moved from almost

---

[12] National Oceanic & Atmospheric Admin., Chemical Data Sheet, CAMEO Chemicals, available at: http://cameochemicals.noaa.gov/chemical/20239 (last visited July 17, 2017).

[13] National Institutes of Health, U.S. National Library of Medicine. Hazardous Substances Data Bank, Toxicology Data Network: Lauramine Oxide, *available at* http://bit.ly/2aTjjrK (last visited July 17, 2017).

[14] *See, e.g.,* DeGroot, A.C., and Weyland, J.W., "Kathon CG: A Review," 18 *Journal of the American Academy of Dermatology* 350 (1988).

exclusively industrial applications to household and cosmetic applications. Since then, MI's use has increased steadily in household and cosmetic applications.

73.    The EPA lists MI as a pesticide and describes it as "moderately to highly toxic to freshwater and estuarine/marine organisms."[15]

74.    A reasonable consumer would not expect a product labeled as "environmentally responsible" to contain a chemical designated as highly toxic to aquatic life.

75.    In fact, none of these chemicals are the type of ingredients that reasonable consumers would expect to find in products advertised as "environmentally responsible."

76.    By including such unnatural and toxic components, Defendant provides the opposite of the advertised "environmentally responsible" Products.

77.    Moreover, Defendant makes no disclaimer regarding the presence of these ingredients on the front label of the packaging, where Defendant makes the prominent "environmentally responsible" claims.

78.    The production and use of these ingredients in the Products may result in its release to the environment through various waste streams.

79.    Because the Products contain unnatural, hazardous, and toxic ingredients, Defendant's claims that the Products are "environmentally responsible" are false, misleading, and designed to deceive consumers into purchasing the Products.

## THE NATURE OF THE ILLEGALITY OF DEFENDANT'S CONDUCT

80.    Defendant has profited enormously from its false advertising of the Products. Costco is one of the largest retailers in the world and is perceived by consumers to have a commitment to higher standards in product formulation. Indeed, Costco positions its own private label products—the "Kirkland Signature" line—as follows: "The working rule followed by

---

[15] U.S. Environmental Protection Agency, Reregistration Eligibility Decision (RED)—Methylisothiazolinone. EPA738-R-98-012 (1998), *available at* http://archive.epa.gov/pesticides/reregistration/web/pdf/3092.pdf.

Costco buyers is that all Kirkland Signature products must be equal to or better than the national brands, and must offer a savings to our members."[16]

81.    The Federal Trade Commission (FTC), whose mission is, in part, "[t]o prevent business practices that are anticompetitive or deceptive or unfair to consumers," has issued marketing standards, known as the "FTC Green Guides,"[17] that apply to the unfair and deceptive nature of Defendant's environmental marketing claims.

82.    Environmental marketing claims that violate the standards of the Green Guides are *per se* unlawful under California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

83.    The acts and omissions alleged herein are in contravention of the FTC Green Guides and in violation of the EMCA in several respects. For example, Defendant Costco makes unqualified representations about the "environmentally responsible" qualities of the Products, whereas the FTC Green Guides advise that, to prevent deceptive claims, any "qualifications and disclosures should be clear, prominent and understandable."[18]

84.    Furthermore, the FTC Green Guides advise: "To make disclosures clear and prominent, marketers . . . should place disclosures in close proximity to the qualified claim."[19] Defendant has not placed any clear, prominent disclosures in close proximity to its unqualified

---

[16] Costco, "Kirkland Signature Means Quality and Value," *available at* http://www.costco.com/kirkland-signature.html (last visited July 17, 2017) ("The Kirkland Signature label today appears on about 20 percent of the products you find in your local [Costco] warehouse—on everything from men's dress shirts to laundry detergent, pet food to toilet paper, canned foods to cookware, olive oil to beer, and automotive products to health and beauty aids.").

[17] Federal Trade Commission, *GUIDES FOR THE USE OF ENVIRONMENTAL MARKETING CLAIMS*, 16 C.F.R. Part 260, *available at* http://bit.ly/1osdMfk.

[18] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("*Qualifications and disclosures*. The Commission traditionally has held that in order to be effective, any qualifications or disclosures such as those described in these guides should be sufficiently clear, prominent and understandable to prevent deception.").

[19] 16 C.F.R. § 260.3(a) (2012); *see also* 16 C.F.R. § 260.6(a) (2003) ("Clarity of language, relative type size and proximity to the claim being qualified, and an absence of contrary claims that could undercut effectiveness, will maximize the likelihood that the qualifications and disclosures are appropriately clear and prominent.").

"environmentally responsible" claims.

85.     Similarly, Defendant makes unqualified representations that the Products offer general environmental benefits, whereas the Green Guides advise that "marketers should not make unqualified general environmental benefit claims."[20] By way of illustration and not limitation, Defendant's representations that the Products are "naturally derived" and use "safer chemistry," and Defendant's use of illustrations of a green leaf floating gently on a pristine pool of water, are all such unqualified representations of general environmental benefit.[21]

86.     Although the FTC Green Guides do not specifically address terms such as "naturally derived" or "plant-based formula," the FTC has made clear that the general principles of the Guides apply—*i.e.*, use of such terms must not be misleading to reasonable consumers, and marketers must have substantiation for such claims if they evoke environmental benefits.[22] Defendant's use of these terms is misleading and unsubstantiated, as described herein.

87.     The FTC Green Guides make clear that where a product features a third-party seal or other certification pertaining to an attribute of the product, that claim must be qualified to ensure that consumer deception does not occur.[23] Here, Defendant's Products feature an EPA

---

[20] 16 C.F.R. § 260.4(b) (2012); *see also* 16 C.F.R. § 260.7(a) (2003) ("It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. . . . [E]very express and material implied claim that the general assertion conveys to reasonable consumers about an objective quality, feature or attribute of a product or service must be substantiated. Unless this substantiation duty can be met, broad environmental claims should either be avoided or qualified, as necessary, to prevent deception about the specific nature of the environmental benefit being asserted.").

[21] *See, e.g.*, 16 C.F.R. § 260.4 ("Example 3") (2012) ("A marketer's advertisement features a picture of a laser printer in a bird's nest balancing on a tree branch, surrounded by a dense forest. In green type, the marketer states, 'Buy our printer. Make a change.' Although the advertisement does not expressly claim that the product has environmental benefits, the featured images, in combination with the text, likely convey that the product has far-reaching environmental benefits and may convey that the product has no negative environmental impact. Because it is highly unlikely that the marketer can substantiate these claims, this advertisement is deceptive.").

[22] *See* Federal Trade Commission, *THE GREEN GUIDES: STATEMENT OF BASIS AND PURPOSE* at 259, *available at* http://bit.ly/2bg7w63 (citing 75 Fed. Reg. 63,552, 63,585-63,586 (Oct. 15, 2010)). The FTC did not propose specific guidelines regarding the term "natural" because it "lacked consumer perception evidence indicating how consumers understand 'natural'." *Id.*

[23] *See* 16 C.F.R. § 260.6(d) (2012) ("A marketer's use of an environmental certification or seal of approval likely conveys that the product offers a general environmental benefit . . .  if the certification or seal does not convey the

"Recognized for Safer Chemistry" seal, which implies to consumers that the certifying agency unqualifiedly supports the safety profile of the Products. Defendant's failure to include qualifying language for this seal is misleading, as described herein.

88.     These additional unqualified claims and imagery provide the context in which consumers view Costco's misleading "environmentally responsible" representations, increasing the extent to which consumers are deceptively misled into believing that the Products offer naturally derived, environmentally sound, and relatively safer product alternatives to traditional dish soap and detergent offerings.

89.     Defendant has profited enormously from false and misleading representations that the Products are natural, safe, and environmentally sound. The purpose of this action is to put an end to Defendant's deceptive marketing of the Products.

## CLASS ALLEGATIONS

90.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated individuals. Plaintiffs seek to represent a nationwide class defined as follows:

> All consumers who purchased the Products within the United States within any applicable limitations period before the filing of this complaint until the date of class certification. Excluded from the Nationwide Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

91.     Additionally, Plaintiff Natalia Gonzalez brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated New Yorkers, defined as follows:

**The New York Subclass**

> All consumers who purchased the Products in New York within any applicable limitations period before the filing of this complaint until the

---

basis for the certification or seal, either through the name or some other means. . . . [M]arketers should not use environmental certifications or seals that do not convey the basis for the certification.").

date of class certification. Excluded from the New York Subclass are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

92.    Additionally, Plaintiff Annallee Dodd brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated Californians, defined as follows:

**The California Subclass**

All consumers who purchased the Products within California within any applicable limitations period before the filing of this complaint until the date of class certification. Excluded from the California Subclass are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

93.    At this time, Plaintiffs do not know the exact number of Class members. Given the nature of the claims and the number of retail stores in the United States, California, and New York selling Defendant's Products, Plaintiffs believe that Class members are so numerous that joinder of all members is impracticable.

94.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)  whether Defendant misrepresented the Products;

(b)  whether Defendant's conduct was unfair and/or deceptive;

(c)  whether Defendant's conduct constitutes a breach of express warranty and/or implied warranty;

(d)  whether Defendant, through deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, was enriched at the expense of Plaintiffs and the other members of the New York Subclass through the payment of the purchase price for the Products.; and

(e)  whether Plaintiffs and the Class have sustained injury with respect to the

common law claims asserted, and if so, the proper measure of their injury.

95.   With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a)  whether, in violation of § 349 of the New York General Business Law ("GBL"), Defendant engaged in deceptive acts or practices; and

(b)  whether, in violation of GBL § 350, Defendant engaged in false advertising.

96.   With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a)  whether, in violation of California Civil Code § 1770(a)(7), Defendant advertised its Products with the intent not to sell them as advertised;

(b)  whether, in violation of California Civil Code §1770(a)(5), Defendant represented on packaging for the Products that the Products had characteristics, ingredients, uses, or benefits that they do not have;

(c)  whether Defendant is subject to liability for violating California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1784;

(d)  whether Defendant has violated California's Environmental Marketing Claims Act, Cal. Bus. & Prof. Code §§ 17580-17581;

(e)  whether Defendant has violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210;

(f)  whether Defendant has violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500-17536;

(g)  whether Defendant has violated California's green advertising law, Cal. Bus. & Prof. Code §§ 17580-17581; and

(h) whether the California Subclass is entitled to an award of restitution pursuant to California Business and Professions Code § 17203.

97.     Plaintiffs' claims are typical of those of the Class, because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Products bearing the "environmentally responsible" representations, and Plaintiffs sustained damages from Defendant's wrongful conduct.

98.     Plaintiff Natalia Gonzalez's claims are typical of the New York Subclass, because like all members of the New York Subclass, she purchased, in a typical consumer setting within New York, Defendant's Products bearing the "environmentally responsible" representations, and she sustained damages from Defendant's wrongful conduct.

99.     Plaintiff Annallee Dodd's claims are typical of the California Subclass, because like all members of the California Subclass, she purchased, in a typical consumer setting within California, Defendant's Products bearing the "environmentally responsible" representations, and she sustained damages from Defendant's wrongful conduct.

100.   Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel who are experienced in litigating complex class actions. Plaintiffs have no interests which conflict with those of the Classes.

101.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

102.   The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

103.   The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

might not. Additionally, individual actions could be dispositive of the interests of the Classes even where certain Class members are not parties to such actions.

104.   Defendant's conduct is generally applicable to the Classes as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Classes as a whole. Therefore, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

### Violation of New York General Business Law § 349
### (On Behalf of the New York Subclass)

105.   Plaintiff Natalia Gonzalez incorporates by reference and realleges herein all paragraphs alleged above.

106.   Defendant engaged in false and misleading marketing concerning the Products and was able to obtain higher purchase prices for the Products based on these misleading claims.

107.   As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to Plaintiff Natalia Gonzalez and other members of the New York Subclass, Defendant engaged in and continues to engage in deceptive acts and practices.

108.   Plaintiff Natalia Gonzalez and the other members of the New York Subclass seek to enjoin such unlawful deceptive acts and practices as described above. Each of the New York Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined, in that Defendant will continue to falsely and misleadingly advertise the safety and environmental benefits of the Products. Towards that end, Plaintiff Natalia Gonzalez and the New York Subclass request an order granting them injunctive relief in the form of an order prohibiting Defendant from representing that the Products are safer or environmentally desirable, unless and until the harmful chemicals are removed.

109.   In this regard, Defendant has violated, and continues to violate, New York General Business Law ("GBL") § 349, which makes deceptive acts and practices unlawful. As a direct

and proximate result of Defendant's violation of GBL § 349 as described above, Plaintiff Natalia Gonzalez and the other members of the New York Subclass have suffered damages in an amount to be determined at trial.

110.   Wherefore Plaintiff Natalia Gonzalez, on behalf of the New York Subclass, prays for relief as set forth herein.

## COUNT II

### Violation of New York General Business Law § 350
### (On Behalf of the New York Subclass)

111.   Plaintiff Natalia Gonzalez incorporates by reference and realleges herein all paragraphs alleged above.

112.   Defendant engaged in false advertising concerning the Products and was able to obtain higher purchase prices for the Products based on the false advertising.

113.   As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to Plaintiff Natalia Gonzalez and other members of the New York Subclass, Defendant engaged in and continues to engage in false advertising.

114.   Plaintiff Natalia Gonzalez and the other members of the New York Subclass seek to enjoin such unlawful false advertising as described above. Each of the New York Class members will be irreparably harmed unless the unlawful actions of Defendant are enjoined, in that Defendant will continue to falsely and misleadingly advertise the safety and environmental benefits of the Products. Towards that end, Plaintiff Natalia Gonzalez and the New York Subclass request an order granting them injunctive relief in the form of an order prohibiting Defendant from representing that the Products are environmentally desirable or safer, unless and until the harmful chemicals are removed.

115.   In this regard, Defendant has violated, and continues to violate, GBL § 350, which makes false advertising unlawful. As a direct and proximate result of Defendant's violation of GBL § 350 as described above, Plaintiff Natalia Gonzalez and the other members of the New York Subclass have suffered damages in an amount to be determined at trial.

116.    Wherefore Plaintiff Natalia Gonzalez, on behalf of the New York Subclass, prays for relief as set forth herein.

## COUNT III

### Unfair and Deceptive Acts and Practices in Violation of California's Consumers Legal Remedies Act
### (On Behalf of the California Subclass)

117.    Plaintiff Annallee Dodd incorporates by reference and realleges herein all paragraphs alleged above.

118.    This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

119.    Plaintiff Annallee Dodd and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

120.    Plaintiff Annallee Dodd, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

121.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

122.    As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff Annallee Dodd and the other members of the California Subclass that the Products "environmentally responsible."

123.    As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

124.    Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff Annallee Dodd seeks an order of this Court that includes, but is not limited to, an order requiring Defendant to

remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "environmentally responsible" qualities.

125.   Plaintiff Annallee Dodd and the other California Class members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

126.   The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff Annallee Dodd and the other members of the California Class.

127.   CLRA § 1782 NOTICE. On January 27, 2016, a pre-suit notice and demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that, within thirty (30) days from receipt, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiffs would seek damages in accordance with the CLRA. Defendant received Plaintiff's demand letter on or about January 29, 2016. A true and correct copy of the pre-suit notice and demand letter is attached hereto as Exhibit A.

128.   More than 30 days have elapsed since Defendant's receipt of Plaintiff's notice and demand letter and Defendant has failed to comply with the demand letter. Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiff Annallee Dodd, on behalf of herself and all other members of the California Subclass, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT IV

**Violations of California's False Advertising Law**
**(On Behalf of the California Subclass)**

129.   Plaintiff Annallee Dodd incorporates by reference and realleges herein all paragraphs alleged above.

130.   As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products are unqualifiedly environmentally sound and are safe.

131.   Plaintiff Annallee Dodd and the other members of the California Subclass have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

132.   Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff Annallee Dodd and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "environmentally responsible" qualities.

## COUNT V

### Violations of California's Environmental Marketing Claims Act
### (On Behalf of the California Subclass)

133.   Plaintiff Annallee Dodd incorporates by reference and realleges herein all paragraphs alleged above.

134.   As alleged more fully above, Defendant has falsely advertised the Products by falsely claiming that the Products unqualifiedly provide environmental benefits, are safe, and are made with natural ingredients.

135.   Plaintiff Annallee Dodd and the other members of the California Subclass have suffered injury in fact and have lost money or property as a result of Defendant's violations of California's Environmental Marketing Claims Act ("EMCA"), Cal. Bus. & Prof. Code §§ 17580-17581.

136.   In particular, Defendant has violated and continues to violate California Business and Professions Code § 17580.5, which makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied" and which defines an environmental marketing claim to include "any claim contained in the [the FTC's Green Guides]."

137.   Pursuant to California Business and Professions Code §§ 17203 and 17535, Plaintiff Annallee Dodd and the California Subclass seek an order of this Court that includes, but

is not limited to, an order requiring Defendant to remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "environmentally responsible" qualities.

## COUNT VI

**Violation of California's Unfair Competition Law**
**(On Behalf of the California Subclass)**

138. Plaintiff Annallee Dodd incorporates by reference and realleges herein all paragraphs alleged above.

139. By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass as a whole, by engaging in unlawful, fraudulent, and unfair conduct.

140. Defendant has violated the UCL's proscription against engaging in *unlawful* conduct as a result of:

> (a) its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above;

> (b) its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, as alleged above; and

> (c) its violations of the EMCA, Cal. Bus. & Prof. Code §§ 17580-17581, as alleged above.

141. Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

142. As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of Products is likely to deceive reasonable consumers. Indeed, Plaintiff Annallee Dodd and the other members of the California Subclass were unquestionably deceived regarding the purported "environmentally responsible" qualities of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresent and/or omit the true facts concerning the benefits of the Products. Said acts are fraudulent business practices.

143.   Defendant's acts and practices described above also violate the UCL's proscription against engaging in *unfair* conduct.

144.   Plaintiff Annallee Dodd and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Products.

145.   There is no benefit to consumers or competition by deceptively marketing and labeling the Products, which purport to be "environmentally responsible" despite containing unnatural, hazardous, and toxic ingredients.

146.   Plaintiff Annallee Dodd and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

147.   The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available alternatives which exist in the marketplace, and such conduct is immoral, unethical, and/or unscrupulous, offends established public policy, and/or is substantially injurious to Plaintiff Annallee Dodd and the other members of the California Subclass.

148.   Defendant's violations of the UCL continue to this day.

149.   Pursuant to California Business and Professional Code § 17203, Plaintiff Annallee Dodd and the California Subclass seek an order of this Court that includes, but is not limited to, requirements that Defendant:

> (a) remove and/or refrain from making representations on the Products' packaging representing that the Products provide an unqualified level of "environmentally responsible" qualities;

(b) provide restitution to Plaintiff Annallee Dodd and the other California Class members;

(c) disgorge all revenues obtained as a result of violations of the UCL; and

(d) pay Plaintiff Annallee Dodd and the California Subclass' attorney fees and costs.

## COUNT VII

### Unjust Enrichment

150. Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

151. Plaintiffs and members of the Class conferred benefits on Defendant by purchasing the Products at a premium price.

152. Defendant has knowledge of such benefits.

153. By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit at the expense of Plaintiffs and the other members of the Class. Defendant appreciated the benefit and it would be inequitable for Defendant to retain this benefit because Defendant engaged in deceptive practices and false advertising, as fully alleged above. Plaintiffs and members of the Class were unjustly deprived of payments because they would not have purchased, or would have purchased less of, or would have paid less for, the Products if the true facts had been known.

154. Because it would be unjust and inequitable for Defendant to retain payments Plaintiffs and the Class made for Defendant's Products or to retain the price premium they charge for the Products, Plaintiffs and members of the Class are entitled to restitution for Defendant's unjust enrichment.

## COUNT VIII

### Breach of Express Warranty

155. Plaintiffs incorporate by reference and reallege herein all paragraphs alleged above.

156. Defendant Costco's representations that the Products are "environmentally responsible" constitutes an affirmation of fact made with regard to the Products.

157. Defendant Costco's representations that the Products are "environmentally responsible," Defendant Costco's website promoting the Products, and Defendant Costco's advertising and promotions for the Products are part of the basis of the bargain between Defendant Costco and purchasers of the Products.

158. As set forth in the paragraphs above, Defendant Costco's statements concerning the Products are false.

159. All conditions precedent to Defendant Costco's liability under the above-referenced contract have been performed by Plaintiffs and the other Class members.

160. Defendant Costco breached its express warranties about the Products because, as alleged above, the Products are not "environmentally responsible." Defendant Costco therefore breached the applicable state statutes.

161. As a result of Defendant Costco's breaches of express warranty, Plaintiffs and the other members of the Class were damaged in amounts to be proven at trial.

162. Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and the other members of the Classes, placed Defendant Costco on notice thereof. Specifically, on January 27, 2016, a pre-suit notice and demand letter was sent to Defendant via certified mail that provided notice of Defendant Costco's breaches of express warranty. *See* Exhibit A.

163. Wherefore Plaintiffs, on behalf of the Classes, prays for relief as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Classes as follows:

A. An order certifying the proposed Class, California Subclass, and New York Subclass; appointing Plaintiffs as representatives of the Class; appointing Plaintiff Natalia Gonzalez

as representative of the New York Subclass; and appointing Plaintiff Annallee Dodd as representative of the California Subclass;

B.  A declaration that Defendant is financially responsible for notifying the Class and Subclass members of the pendency of this suit;

C.  Injunctive relief for members of the New York Subclass pursuant to GBL §§ 349 and 350, without limitation;

D.  An award of restitution pursuant to California Business and Professions Code §§ 17203 and 17535 for members of the California Subclass;

E.  An award of disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535 for members of the California Subclass;

F.  An order enjoining Defendant, pursuant to California Business and Professions Code §§ 17203 and 17535, to remove and/or refrain from using representations on Defendant's Products that the Products provide an unqualified level of "environmentally responsible" qualities;

G.  An order requiring proper, complete, and accurate labeling of the Products;

H.  Monetary damages and injunctive relief for members of the California Subclass pursuant to California Civil Code § 1780;

I.  Statutory damages in the maximum amount provided by law;

J.  Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

K.  An order awarding Plaintiffs and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

L.  Any further relief that the Court may deem appropriate.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs demand a trial by jury for all claims so triable.

DATED: July 17, 2017                    Respectfully submitted,

Kim E. Richman
**RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
Email: *krichman@richmanlawgroup.com*

**AHDOOT & WOLFSON, PC**
Tina Wolfson
1016 Palm Avenue
West Hollywood, CA 90069
Telephone: (310) 474-9111
Facsimile: (310) 474-8585
Email: *twolfson@ahdootwolfson.com*

***Counsel for Plaintiffs***