D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
NATALIE GONZALEZ,

                              Plaintiff,                              **MEMORANDUM & ORDER**

              -against-                                               **16-CV-2590 (NGG) (JO)**

COSTCO WHOLESALE CORPORATION; and
DOES 1-5,

                              Defendants.
--------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Natalie Gonzalez brings this action seeking damages and injunctive relief

against Defendant, Costco Wholesale Corporation, challenging Defendant's advertising and

marketing of two of its products—Kirkland Signature Premium Liquid Dish Soap and Kirkland

Signature Premium Laundry Detergent (the "Products"). Plaintiff alleges that Defendant's use of

labels stating that the Products are "environmentally responsible," "recognized for safer

chemistry," "safer for the planet," "made using naturally derived ingredients," and "according to

a biodegradable formula" are, among other things, misleading. (Second Am. Compl. ("SAC")

(Dkt. 24) ¶¶ 4-6.)

      Before the court is Defendant's motion to dismiss Plaintiff's second amended complaint[1]

(the "Motion"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

Defendant moves to dismiss for lack of standing and jurisdiction under Rule 12(b)(1) and (2) and

---

[1] The second amended complaint was brought on behalf of Natalie Gonzalez and Annallee Dodd, and all others similarly situated. (SAC at 1.) Plaintiff Natalie Gonzalez, a New York resident, brought claims on behalf of herself and all other similarly situated New York Residents (defined as "The New York Subclass"). (SAC ¶ 91.) She also seeks to represent a nationwide class. (SAC ¶ 90.) Annallee Dodd, a California Resident, brought claims on behalf of herself and all other similarly situated Californians (defined as "the California subclass"). (SAC ¶ 92.) However, on June 28, 2018, Plaintiff Annallee Dodd voluntarily dismissed her claims against Defendant. (Notice of Voluntary Dismissal (Dkt. 40).)

for failure to state a claim under Rule 12(b)(6). (Mot. to Dismiss ("Mot.") (Dkt. 27); Mem. in Supp. of Mot. ("Mem.") (Dkt. 28).) For the following reasons, the court GRANTS IN PART and DENIES IN PART Defendant's Motion and DENIES Plaintiff's prayer for injunctive relief for lack of standing.

## I.    BACKGROUND

### A.    Facts

Plaintiff challenges Defendant's marketing and advertising of its Kirkland Signature Premium Dish Soap and Laundry Detergent as "environmentally responsible," as well as Defendant's representations that the Products are made from "naturally derived ingredients," are "recognized for safer chemistry," are "safer for the planet," and are made with a "biodegradable formula." (SAC ¶¶ 4-6.) The Products' labels are also filled with imagery—icons resembling recycling symbols, water drops, leaves, and a central image of a leaf floating in pristine water— which, according to Plaintiff, are "highly suggestive of 'green,' environmentally responsible products." (Id. ¶¶ 7, 35-42.) Plaintiff alleges that these statements and this imagery create "an impression that the Products are natural, safer, and environmentally sound alternatives to traditional dish soaps and detergents." (Id. ¶ 8.)

Plaintiff contends that these representations and this impression are false because the Products "contain unnatural, harmful, and toxic chemical ingredients, including sodium hydroxide, sodium lauryl sulfate ('SLS'), lauramine oxide, and methylisothiazolinone ('MI')," as well as methylchloroisothiazolinone ("MCI") and benzisothiazolinone ("BIT"). (Id. ¶ 10, n.3.) According to Plaintiff, "[r]easonable consumers do not expect such ingredients to be in products labeled 'environmentally responsible.'" (Id. ¶ 10.)

Plaintiff alleges that "[b]y deceiving consumers about the nature, quality, and/or ingredients of the Products, [Defendant] was and is able to sell, or sell more of, or charge more for [the Products] than it would be able to if the Products were accurately labeled." (Id. ¶ 15.) Plaintiff alleges that she purchased the Products on multiple occasions in 2015 in Queens, New York, and that she reviewed and relied on the "environmentally responsible" labeling and images when purchasing the Products. (Id. ¶¶ 21-22.) Plaintiff contends that if Defendant remedied its misleading conduct, she would consider buying the Products again. (Id. ¶ 25.)

Plaintiff brings this case on behalf of a nationwide class, and, separately, on behalf of a New York sub-class. (Id. ¶¶ 90-91.)

### B. The Second Amended Complaint

Plaintiff's second amended complaint ("SAC") includes eight claims. (Id.) Four of these claims were voluntarily dismissed (see Notice of Voluntary Dismissal (Dkt. 40)), and thus four of Plaintiff's claims remain. The first remaining claim is for a violation of New York General Business Law ("NYGBL") Section 349. (SAC ¶¶ 105-10.) The second claim is for a violation of NYGBL Section 350. (Id. ¶¶ 111-16.) Plaintiff also seeks injunctive relief pursuant to both NYGBL Section 349 and NYGBL Section 350. The third claim is for unjust enrichment. (Id. ¶¶ 150-54.) The fourth claim is for breach of express warranty. (Id. ¶¶ 155-63.)

## II. LEGAL STANDARD

Pre-answer motions to dismiss for lack of standing are governed by Federal Rule of Civil Procedure 12(b)(1). Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). Where, as here, a Rule 12(b)(1) motion is based solely on the allegations of the pleading, the court is tasked with determining whether or not the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." Id. (quoting Lujan v. Defenders of

Wildlife, 504 U.S. 555, 561 (1992)). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." Id. However, the burden of proof, or in other words, the "manner and degree" of evidence required to withstand a dismissal for lack of standing, increases as the suit proceeds. Id. at 56.

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted).

## III.    DISCUSSION

### A.    Article III Standing

The first issue the court must address is whether it has subject matter jurisdiction under Rule 12(b)(1), which concerns whether this court has constitutional standing to hear Plaintiff's claims.

The standing requirement, as governed by Article III of the Constitution, restricts federal courts to the resolution of "Cases" and "Controversies." Lujan, 504 U.S. at 560. To ensure that this requirement is met, the party invoking federal jurisdiction, in this case, Plaintiff, bears the burden of establishing standing—the personal interest that must exist at the start of the litigation. Davis v. Fed. Election Comm'n, 554 U.S. 724, 733 (2008); Lujan, 504 U.S. at 561. The "irreducible constitutional minimum of standing" contains three elements. Lujan, 504 U.S. at 560. First, the plaintiff must have suffered an "injury in fact" that is (a) "concrete and particularized" and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Id. at 560. Second, there must be a "causal connection" between the injury and the conduct complained of, meaning that the injury is "fairly . . . trace[able] to the challenged action of the defendant." Id. at 560-61. Third, the injury must be likely to be "redressed by a favorable decision." Id. at 561.

At issue here are the injury-in-fact and causal-connection elements required to establish Article III standing. Defendant argues that Plaintiff lacks standing to sue because she failed to plead a concrete and particularized injury in fact, and, further, because Plaintiff failed to show that Defendant's allegedly deceptive labeling of the Products caused Plaintiff's alleged injury. (Mem. at 16; see also Reply Mem. in Supp. of Mot. ("Reply") (Dkt. 30) at 7-8.)

For the reasons stated below, the court concludes that Plaintiff has sufficiently pled facts to establish standing under Article III.

### 1.    Injury in Fact

There is a "low threshold" for establishing injury in fact which "need not be capable of sustaining a valid cause of action," but "may simply be the fear or anxiety of future harm." Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008). However, an injury in fact must still be particularized and concrete. For an injury to be "particularized" it must affect the plaintiff in a "personal and individual way." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). For an injury to be "concrete" it must actually exist, meaning that it is "real," not "abstract;" it need not, however, be "tangible." Id. at 1548-49. Certain economic injuries can be deemed particularized and concrete such that they are sufficient to establish standing. Boelter v. Hearst Commc'ns, Inc., 269 F. Supp. 3d 172, 186 (S.D.N.Y. 2017); see also Sierra Club v. Morton, 405 U.S. 727, 733-34 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing."). For example, in Borenkoff v. Buffalo Wild Wings, Inc., which Defendant submitted to this court in support of its Motion, the court held that "paying for one item and receiving another" is a "concrete and particularized" injury. No. 16-CV-8532 (KBF), 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018). (See also id. (Dkt. 33-1).)

"[E]conomic injury suffices as a form of injury-in-fact for standing purposes." Ackerman v. Coca-Cola Co., No. 09-CV-395 (DLI) (RML), 2013 WL 7044866, at *13 (E.D.N.Y. July 18, 2013). In Ackerman, the plaintiffs, New York residents, alleged that defendants The Coca Cola Company and Energy Brands Inc. d/b/a Glaceau engaged in the deceptive labeling and marketing of "vitaminwater," which the defendants promote as a "nutrient-enhanced water beverage." 2013 WL 7044866, at *1. Similarly, in the case at hand, Plaintiff alleges that "environmentally responsible" labeled Products were "deceptively marketed as being uniquely positioned, in contrast to Defendant's and other companies' conventional cleaning product offerings, to provide consumers with natural, environmentally sound, and safe

alternatives." (SAC ¶¶ 4-10, 39, 49.) The court in <u>Ackerman</u> held that the plaintiffs had standing to sue, because they purchased vitaminwater under the assumption, informed by the product labels and marketing, that "vitaminwater" was "healthier for them than it actually was, or than other beverages would have been." 2013 WL 7044866, at *15. Likewise, Plaintiff alleges that she suffered an economic injury by virtue of purchasing the Products under the assumption that they were "environmentally responsible," based on Defendant's labeling and marketing of the Products. (Pl. Mem. in Opp'n to Mot. ("Opp'n") (Dkt. 29) at 15; SAC ¶¶ 21-24.) However, had Plaintiff known the "true facts," namely that the Products allegedly contained unnatural, harmful, and toxic chemical ingredients, she contends that she "would not have purchased, or would have purchased less of, or would have paid less for, the Products." (SAC ¶¶ 10, 21-24, 55, 153.)

Defendant contends that Plaintiff's allegation that she would not have purchased the Products if she had known what they contained does not amount to a "concrete" injury, but rather, is a vague and conclusory allegation. (Mem. at 16.) Defendant cites to <u>Treiber v. Aspen Dental Mgmt., Inc.</u>, 635 Fed. App'x 1 (2d Cir. 2016), to support this argument, but its reliance on this case is misguided because its facts are distinguishable from this court's case. (<u>See</u> Mem. at 16 (citing <u>Treiber</u>, 635 Fed. App'x at 3).) In <u>Treiber</u>, the complaint did not allege "what particular services or goods were allegedly overpriced, what billed services were allegedly not provided, or what products and services were allegedly provided without consent or authorization," but rather "simply allege[d] that these are inevitable consequences of [defendant's] business model." <u>Treiber v. Aspen Dental Mgmt., Inc.</u>, 94 F. Supp. 3d 352, 363 (N.D.N.Y. 2015), <u>aff'd</u>, 635 F. App'x 1 (2d Cir. 2016). Here, however, Plaintiff <u>does</u> allege what particular products were misleadingly labeled and marketed (Signature Dish Soap and Signature

7

Laundry Detergent), and furthermore, Plaintiff alleges what made their labeling misleading (the fact that the Products allegedly contained unnatural, toxic, and harmful ingredients). (See SAC ¶¶ 15, 55-79.) Plaintiff's allegations as to the factual differences between the Products she purchased, and the "environmentally responsible" products she believed she was purchasing, are concrete and not too abstract—as the injury was in Treiber—to satisfy the injury requirement for standing.

Therefore, in alleging an economic injury by virtue of paying for a product Plaintiff believed to be environmentally responsible based on Defendant's marketing, but instead receiving a product containing allegedly harmful chemicals, Plaintiff satisfies the low threshold necessary to establish the injury-in-fact element of standing.

        2.     Causal Connection

The requirement that there be a "causal connection" between the injury and the conduct complained of "does not create an onerous standard." Carter, 822 F.3d at 55. The requirement is meant to ensure that the injury was caused by the conduct complained of rather than by an independent action of some third party not before the court. See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 154 (4th Cir. 2000).

Here, Plaintiff claims that Defendant's deceptive labeling and marketing of the Products caused her to purchase the Products, which resulted in her being "deprived of payments." (SAC ¶¶ 46, 153.) Thus, Plaintiff provides sufficient evidence to connect her injury to Defendant's conduct.

Defendant argues that Plaintiff fails to prove this causal connection, relying heavily on In re KIND LLC "Healthy & All Natural" Litig., 209 F. Supp. 3d 689, 697 (S.D.N.Y. 2016). (See Mem. at 11; Reply at 9). However, the facts of In re KIND are distinguishable from the case at

hand. The plaintiffs, the KIND-consumers, brought a class action against the defendants, KIND LLC and KIND Management, Inc., alleging that the defendants "deceptively marketed" certain products as "healthy," "all natural," and/or "non GMO." In re KIND LLC, 209 F. Supp. 3d at 690. The plaintiffs voluntarily dismissed their "healthy" claims, and the plaintiffs' "all natural" claims were stayed pending further guidance from the FDA as to whether a product may be labeled "natural." Id. at 697. As a result, the court's decision on standing pertained to the plaintiffs' stand-alone "non-GMO" claim, which the court admitted was unlikely to have been the plaintiffs' "original intent." Id. The court held that it was unclear whether plaintiffs had standing because they did not allege that they relied on the "non-GMO" labeling prior to purchasing the product, but, rather, they alleged that they had relied on the "all natural" labeling. Id. In the case at hand, however, Plaintiff alleges that she "viewed and relied upon [Defendant]'s 'environmentally responsible' representations when purchasing the Products," and those claims remain before this court. (SAC ¶ 22.)

Defendant also contends that because Plaintiff does not claim that she ever viewed the Products' ingredient list, or assert how she learned that the Products contained the harmful ingredients, it is impossible to "fairly trace" the "unalleged injury" to the Products' labeling. (Mem. at 17-18; Reply at 8-9.) Although Plaintiff does not explicitly state that she "viewed" the ingredient list, she alleges that the Products contain unnatural, harmful, and toxic chemical ingredients, including sodium hydroxide, sodium lauryl sulfate, lauramine oxide, and methylisothiazolinone, and she provides images in the complaint of the ingredient information which list the above-mentioned ingredients on the Products. (SAC ¶¶ 10, 41.) Plaintiff's allegations along with the pictures are sufficient to "fairly trace" Plaintiff's alleged injury to

Defendant's representation that the Products were "environmentally responsible," and therefore Plaintiff has established the causal connection required for Article III standing.

### B.     Injunctive Relief

Plaintiff seeks injunctive relief pursuant to NYGBL Section 349, which governs deceptive acts and practices, and Section 350, which governs false advertising. Plaintiff seeks such relief in the form of an order prohibiting Defendant from representing that the Products are safer or environmentally desirable, unless and until the harmful chemicals are removed. (SAC ¶¶ 108, 109, 114, 115.) Defendant seeks to dismiss Plaintiff's request for injunctive relief for lack of standing. (Mem. at 12.).

A plaintiff "must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). "A plaintiff does not necessarily have standing to seek injunctive relief, even when it is clear that he has standing to seek damages." Davis v. Hain Celestial Grp., Inc, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018). An injunction is only available if the plaintiff can show an irreparable injury— i.e., a real or immediate threat that the plaintiff will be wronged again. City of Los Angeles v. Lyons, 461 U.S. 95, 96, 111 (1983). Past injuries do not confer standing to seek injunctive relief "unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).

The issue here is whether Plaintiff's allegations are sufficient to establish a "real or immediate threat" of future injury for standing purposes. (See Opp'n at 16.) Defendant argues that Plaintiff lacks standing to seek injunctive relief because Plaintiff fails to demonstrate a "real or immediate threat" of future injury, and, instead, incorrectly relies on past injuries to attempt to satisfy the injury requirement. (Mem. at 18; Reply at 9-10.) Plaintiff contends that if the

Products were "altered to conform to the representations on the labels, [she] would consider purchasing the Products again," on the "as-labeled basis," but because she was deceived by the labels once, she can no longer trust that the Products are correctly labeled, and therefore has sufficiently alleged an ongoing future injury, and thus has standing to seek injunctive relief. (Opp'n at 16 (citing SAC ¶ 25).)

There is a split of authority within the Second Circuit as to whether a plaintiff has standing to seek an injunction against allegedly deceptive advertising when the plaintiff does not plan to purchase the product in question again. In re Amla Litig., 282 F. Supp. 3d 751, 769 (S.D.N.Y. 2017). Some courts have held that consumer plaintiffs who assert that a product's labeling or marketing is misleading to a reasonable consumer have standing to seek injunctive relief, whereas other courts have held that such allegations are insufficient to establish the future-injury requirement of standing. Compare Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) (holding that a plaintiff had standing to seek injunctive relief based on his false advertising claims even though plaintiff alleged that he would not purchase the deceptive product again) and Delgado v. Ocwen Loan Servicing, LLC, No. 13-CV-4427 (NGG) (RML), 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (holding that plaintiffs have standing to seek injunctive relief because the defendants' practices are allegedly ongoing, "exposing" the plaintiffs to future misleading statements) and Ackerman v. Coca-Cola Co., 2013 WL 7044866, at *15 n.23 (holding that a plaintiff has standing to seek injunctive relief based on allegations that a defendant's labeling and marketing of its product is misleading to a reasonable consumer, and this allegedly deceptive conduct is ongoing) with Atik v. Welch Foods, Inc., 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, at *1, 4, 5, 6 (E.D.N.Y. Sep. 30, 2016) (holding that the plaintiffs, consumers of Welch's Fruit Snacks, whose alleged injury was the purchase of fruit

snacks based on misrepresentations of the snacks' health qualities, did not have standing to seek injunctive relief, even though the plaintiffs alleged they would resume their purchases if they knew the advertising was truthful) and Tomasino v. Estee Lauder Cos. Inc., 44 F. Supp. 3d 251, 255-56 (E.D.N.Y. 2014) (holding that a plaintiff failed to allege a future injury to establish standing for injunctive relief because the plaintiff demonstrated that she is unlikely to purchase the products at issue again).

Despite the absence of Supreme Court or Second Circuit law regarding the proper standard for whether a plaintiff has standing to seek injunctive relief in this context, the requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy. Atik, 2016 WL 5678474, at *6. See also Lyons, 461 U.S. at 102.

Plaintiff alleges that she was injured in the past when she bought the Products because she based her decision to purchase the Products on Defendant's alleged misrepresentations and "would not have purchased the Products if she knew they contained unnatural, harmful, and toxic chemical ingredients." (SAC ¶ 24.) Plaintiff also alleges that she would resume purchasing the Products in the future if "Defendants misleading conduct were remedied." (Id. ¶ 25.) These allegations are insufficient to establish a likelihood of future injury because Plaintiffs cannot rely on past injury. See e.g., Atik, 2016 WL 5678474, at *6; Tomasino, 44 F. Supp. 3d at 256 ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" (quoting O'Shea v. Littleton, 414 U.S. 488, 495–96 (1974))).

Accordingly, the court dismisses Plaintiff's request for injunctive relief for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) for lack of standing.

## C. Personal Jurisdiction: Out-of-State Class Members

Plaintiff brought this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals. Plaintiff seeks to represent both a nationwide class[2] and a New York sub-class.[3] (SAC ¶¶ 90-91.) Defendant asserts that this court lacks personal jurisdiction over Defendant to adjudicate the claims of putative class members that are not citizens of New York. (Mem. at 19.)

This court agrees with Defendant that the court lacks general personal jurisdiction over Defendant to adjudicate the claims of the out-of-state class members because New York is not the state where Defendant's principal place of business is located nor is it where Defendant is incorporated. (See id.) See Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). However, what remains at issue here is whether Plaintiff's claims on behalf of the putative nationwide class should be dismissed for lack of specific personal jurisdiction over Defendant. Defendant asserts that they should, based on its interpretation of the Supreme Court's opinion in Bristol-Myer Squibb v. Superior Court of California, 137 S. Ct. 1773 (2017). Plaintiff, however, argues that Bristol-Myers is not applicable to the case at hand because she has brought a class action, and Bristol-Myers was not a class action, but a mass tort action. (Opp'n at 13.)

---

[2] Plaintiff defines the nationwide class as follows:

> All consumers who purchased the Products within the United States within any applicable limitations period before the filing of this complaint until the date of class certification. Excluded from the Nationwide Class are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

(SAC ¶ 90.)

[3] Plaintiff defines the New York sub-class as follows:

> All consumers who purchased the Products in New York within any applicable limitations period before the filing of this complaint until the date of class certification. Excluded from the New York Subclass are any of Defendant's officers, directors, or employees; officers, directors, or employees of any entity in which Defendant currently has or has had a controlling interest; and Defendant's legal representatives, heirs, successors, and assigns.

(SAC ¶ 91.)

In <u>Bristol-Myers</u>, over 600 individual plaintiffs, some California residents, some not, brought a mass-product-liability action in California state court against the pharmaceutical manufacturer Bristol-Myers Squibb. 137 S. Ct. at 1777. The defendant challenged the state court's jurisdiction over the nonresidents' claims on the ground that neither the conduct challenged, nor those plaintiffs' injuries, had occurred in California. <u>Id.</u> at 1781. Similarly, here, Defendant challenges federal court jurisdiction over the nonresidents' claims on the ground that the non-resident-plaintiffs did not incur the alleged injuries in New York because they purchased the Products in other states. The Supreme Court in <u>Bristol-Myers</u> held that the mere fact that other plaintiffs', California residents', conduct and injuries occurred in California does not allow the State to assert specific jurisdiction over the nonresidents' claims, who lacked any connection to California. <u>Id.</u> at 1781-82.

.Bristol-Myers is different from the case at hand in two notable ways: (1) <u>Bristol-Myers</u> was a multi-plaintiff product liability action filed in state court, whereas here, plaintiff filed her class action complaint in federal court; and (2) <u>Bristol-Myers</u> addressed mass tort actions rather than class actions. The Supreme Court explicitly stated that it did not answer "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." <u>Id.</u> at 1784. Furthermore, as Justice Sotomayor noted in her dissent, the court did not address whether its opinion "would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." <u>Id.</u> at 1789 n.4 (Sotomayor, J., dissenting). "A decision leaving an issue open cannot be described as 'controlling' with respect to that issue." <u>Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC</u>, No. 12-CV-8852 (JMF), 2018 WL 922191, at *2 (S.D.N.Y. Feb. 15, 2018). These issues have not yet been resolved by the Supreme Court

or the circuit courts, and federal district courts are split. See § 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 6:26 (5th ed. 2018).

Some district courts have declined to extend Bristol-Myers to federal class actions, noting that the differences between a class action and a mass tort action are meaningful for purposes of personal jurisdiction. See e.g., Molock v. Whole Foods Mkt., Inc., 297 F. Supp. 3d 114, 126 (D.D.C. 2018); Becker v. HBN Media, Inc., No. 18-CV-60688, 2018 WL 3007922, at *2 (S.D. Fla. June 6, 2018); Fitzhenry-Russell v. Dr. Pepper Snapple Group, No. 17-CV-00564 (NC), 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017); In re Chinese-Manufactured Drywall Prods. Liability Litig., No. 09-2047, 2017 WL 5971622, at *21 (E.D. La. Nov. 30, 2017); see also Sloan v. Gen. Motors LLC, 287 F. Supp. 3d 840, 858-59, 864 (N.D. Cal. 2018) (holding Bristol-Myers does not preclude federal jurisdiction over out-of-state named plaintiff claims and reasoning that judicial economy, avoidance of piecemeal litigation, overall convenience of the parties, and minimal additional burden on the defendant support such a holding).

In a mass tort action, "each plaintiff [is] a real party in interest to the complaint[.]" Fitzhenry-Russell, 2017 WL 4224723, at *5. However, "[i]n an action brought as a class action, personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action . . . Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." (Opp'n at 13-14 (quoting Beach v. Citigroup Alternative Investments LLC, No. 12-CV-7717 (PKC), 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014)); see also Fitzhenry-Russell, 2017 WL 4224723, at *5 (stating that in a putative class action, "one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs.").

As Defendant notes, however, other courts have dismissed class-action claims based on the Supreme Court's holding in Bristol-Myers.[4] See, e.g., In re Dental Supplies Antitrust Litig., No. 16-CV-696 (BMC) (GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (rejecting the plaintiffs' argument that Bristol-Myers had no effect on the law in class actions and holding that plaintiffs lacked personal jurisdiction for failure to show a direct connection between the forum and the specific claims); Spratley v. FCA US LLC, No. 317-CV-0062 (MAD) (DEP), 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying Bristol-Myers and dismissing the out-of-state plaintiffs' claims for lack of specific jurisdiction, because they showed no connection between their claims and the defendant's contacts with the forum state); McDonnell v. Nature's Way Prod., LLC, No. 16-CV-5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (applying Bristol-Myers and dismissing the non-resident plaintiffs' claims, who had no connection to the forum state, except for resident plaintiffs' purchases of products in the forum, which "cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents.").

Nonetheless, as Plaintiff notes, she has not yet brought a motion to certify a nationwide class, and because of the "unsettled nature of the law following Bristol-Myers"—specifically its applicability to federal class actions—this court will defer its resolution of this issue until Plaintiff files a motion for class certification, if she does in fact decide to do so. See Campbell v. Freshbev LLC, No. 16-CV-7119 (FB) (ST), 2018 WL 3235768, at *2 (E.D.N.Y. July 3, 2018) (deferring on the question of whether Bristol-Myers applied to nationwide class actions until a

---

[4] Defendant also supports its Bristol-Myers argument by citing to Jinright v. Johnson & Johnson, Inc., No. 17-CV-1849 (ERW), 2017 WL 3731317 (E.D. Mo. Aug. 30, 2017) and Covington v. Janssen Pharms., Inc., No. 17-CV-1588 (SNLJ), 2017 WL 3433611 (E.D. Mo. Aug. 10, 2017). (See Mem. at 21.) However, neither of these cases appears to have been filed as a class action.

motion for class certification was brought, but citing cases that have declined to extend the logic of Bristol-Myers).

**D.      Substantive Claims**

Defendant moves to dismiss each of Plaintiff's four remaining claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  These four claims are for: (1) violations of NYGBL section 349 (SAC ¶¶ 105-10); (2) violations of NYGBL section 350 (id. ¶¶ 111-16); (3) unjust enrichment (id. ¶¶ 150-54); and (4) breach of express warranty (id. ¶¶ 155-63).  For the following reasons, the court denies Defendant's Motion with respect to the NYGBL claims and the breach of express warranty claim, and grants Defendant's Motion with respect to the unjust enrichment claim.

1.      The Express Warranty Claim

Under New York law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods or "any description of the goods" that is "part of the basis of the bargain" creates an express warranty.  See Williamson v. Stryker Corp., No. 12-CV-7083 (CM), 2013 WL 3833081, at *8 (S.D.N.Y. July 23, 2013) (quoting N.Y. Uniform Comm. Code § 2-313).  "To state a claim for breach of express warranty, the plaintiff must allege that it relied upon the warranty to its detriment."  Id. at *8 (citing Weiner v. Snapple Beverage Corp., No. 07-CV-8742 (DLC), 2011 WL 196930, at *5 (S.D.N.Y. Jan. 21, 2011)).

Plaintiff alleges in the SAC that Defendant was the seller of the Products (e.g., SAC ¶¶ 4, 15), that Defendant made affirmations of fact or promises regarding the Products (e.g., id. ¶¶ 4, 6, 35-38), that Plaintiff purchased these Products (e.g., id. ¶¶ 21-22), that Defendant's misrepresentations regarding the Products formed part of the basis of the bargain between Plaintiff and Defendant (e.g., id. ¶¶ 23-24), and that Plaintiff relied on these misrepresentations

to her detriment (e.g., id. ¶¶ 24, 98). Thus, Plaintiff has alleged facts supporting each of the elements of her express warranty claim.

Defendant, however, argues that Plaintiff's express warranty claim fails because Plaintiff does not and cannot identify a specific, actionable misrepresentation. (Mem. at 15.) Defendant specifically contends that Plaintiff has not stated, and cannot state, a breach of warranty claim for three reasons: (1) "Environmentally responsible" is too vague of a representation to be an express warranty; (2) the warranty that Plaintiff is actually trying to enforce is that "the Products 'contain only non-toxic, natural substances,'" but such an affirmation does not appear on the Products; and (3) Plaintiff has not pleaded any facts plausibly suggesting that the "environmentally responsible" representation is false, because she ignores label statements that adequately substantiate the "environmentally responsible" representation. (Mem. at 15-17.)

Defendant's first argument that "environmentally responsible" is too vague of a representation to be an express warranty fails. (Mem. 15.) When determining whether an express warranty has been made, courts consider the context of the statement, including, among other things, the content on the label. See, e.g., Jones v. Nutiva, Inc., 16-CV-711 (HSG), 2016 WL 5210935, at *7 (N.D. Cal. Sept. 22, 2016). At this stage, the "environmentally responsible" claim, taking all reasonable inferences in Plaintiff's favor, constitutes an affirmative fact or promise that is not too vague and that is sufficient to create a warranty. Id. at 9. (denying motion to dismiss breach of warranty claim as to statements including "Superfood," "Coconut is one of the world's most nourishing foods," "is 'better than butter,'" and "[a] nutritious substitute in baking" because, taking inferences in the light most favorable to plaintiff, "the challenged statements constitute an affirmative fact or promise").

The court also rejects Defendant's argument that the Products' labeling, which does not represent the products as containing <u>only</u> non-toxic, natural chemicals belies Plaintiff's warranty claim. (Mem. 16.) Plaintiff argues that the promise that the Products are "environmentally responsible" is false because the Products contain chemicals that have been identified by authorities as hazardous, toxic, or bad for the environment. It is this allegation that the court must consider at this stage, and Plaintiff has sufficiently pled facts to support this allegation. Plaintiff's SAC is very specific regarding how Defendant has breached the warranty of "environmentally responsible": Defendant allegedly included toxic and hazardous ingredients in the Products. (<u>E.g.</u>, SAC ¶ 55.)

Lastly, Defendant argues that Plaintiff's express warranty claim fails because additional (non-relied upon) statements on the back of the Products' labels are true and support an inference that the Products are, at least in certain ways, "environmentally responsible." (Mem. 16-17.) Defendant's argument fails. A motion to dismiss is not the appropriate time for the court to consider these statements. Determinations of whether a reasonable consumer would find the product environmentally responsible if considering both the relied upon and non-relied upon statements is a determination that must be made at a later point in this case's proceedings. <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 113 (2d Cir. 2010) ("[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'") (citing <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998)).

For the foregoing reasons, Defendant's motion to dismiss the claim for breach of express warranty is denied.

2. <u>The NYGBL Claims</u>

In her NYGBL Section 349 claim, Plaintiff alleges that "Defendant has violated, and continues to violate [NYGBL Section 349], which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of [NYGBL section 349], Plaintiff . . . [has] suffered damages . . . ." (SAC ¶ 109.) In her NYGBL Section 350 claim, Plaintiff alleges that "Defendant has violated, and continues to violate [NYGBL Section 350], which makes false advertising unlawful. As a direct and proximate result of Defendant's violation of [NYGBL Section 350], Plaintiff . . . [has] suffered damages . . . ." (Id. ¶ 115.)

Defendant argues that Plaintiff's NYGBL claims should be dismissed for two reasons: first, because no reasonable consumer could view the "environmentally responsible" representation as deceptive, and, second, because Plaintiff fails to plead an injury other than "deception." (Mem. at 20; 18.)

Defendant's argument that no reasonable consumer could view the "environmentally responsible" representation as deceptive fails.

Defendant argues that the term "environmentally responsible" is not deceptive under NYGBL when the statement including that term is taken together with the other, unchallenged statements on the labels. (Mem. 20.) As stated above in the court's discussion of Plaintiff's express warranty claim, however, Defendant's challenge depends on what a reasonable consumer's conclusions would be when considering together the two sets of statements on the Products. Defendant's position is that the challenged statements are no more than a promise that Defendant's additional statements are true (i.e., that the Products were designed in accordance with "safer chemistry" guided by the EPA, in conformance with the OECD biodegradable standards and in accordance with the USDA "biobased" standards). (Id. at 21.) As stated above, however, the conclusions that a reasonable consumer would draw from viewing both sets of

statements, and the question of whether the second set of statements undermine Plaintiff's claim that a reasonable consumer would not expect "environmentally responsible" products to contain the allegedly toxic ingredients, are not determinations that the court will make at the motion to dismiss stage. Kardovich v. Pfizer, Inc., 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) ("The Court is fully mindful that issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, and the Court has not considered them here."). Here, Plaintiff's challenge to the statement on the Products is not easily discarded due to other statements located on the Products' labels. Rather, it is unclear what conclusions a reasonable consumer would draw when considering the two sets of statements on the Products.

Defendant further argues that Plaintiff's NYGBL claims should be dismissed because Plaintiff fails to plead an actual or pecuniary harm, but, rather, the only harm that Plaintiff alleges is "deception." (Mem. 18-19.) This argument fails as well. Defendant's position seemingly derives support from the Borenkoff court, which stated:

> . . . Borenkoff's alleged injury is limited to 'the amount [she] paid to BWW.' (FAC ¶ 38.) But Courts applying New York law have routinely held that the loss of the purchase price of an item, standing alone, does not constitute an "actual injury" under GBL § 349. Because Borenkoff does not separately allege that she was harmed by the food items she received, that those items were defective in any way, or that the price of the food items was inflated as a result of using beef tallow, she has failed to adequately plead an injury for purposes of GBL § 349. Accordingly, that claim must be dismissed.

Borenkoff, 2018 WL 502680, at *10 (citation omitted).

The case at hand, however, is different from Borenkoff. The plaintiff in Borenkoff failed to articulate how the defendant's alleged misrepresentations and omissions resulted in a premium being paid. Id. Here, although Plaintiff does not provide explicit facts showing that environmentally responsible products are more expensive than those without such labels, Plaintiff does allege that consumers will pay a premium for more environmentally responsible

products because they will "seek, and will pay a premium for, [cleaning] products that . . . will not negatively affect the environment." (SAC ¶ 2.) Plaintiff also alleges in her complaint that "Defendant engaged in false and misleading marketing concerning the Products and was able to obtain higher purchase prices for the Products based on these misleading claims." (Id. ¶ 106.) Accordingly, Plaintiff has adequately pleaded that she paid a price premium.

Because both of Defendant's arguments for why Plaintiff's NYGBL claims should be dismissed fail, Defendant's motion to dismiss Plaintiff's NYGBL claims is denied.

### 3.    The Unjust-Enrichment Claim

Defendant argues that Plaintiff's unjust-enrichment claim is duplicative of Plaintiff's breach of warranty claims and should thus be dismissed. (Mem. 17.) In response, Plaintiff argues primarily that a plaintiff can bring an unjust-enrichment claim in the alternative. (Opp'n at 14.) The court agrees with Defendant.

"[U]njust enrichment is not a catchall cause of action to be used when others fail . . . [and a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon N.Y., Inc., 944 N.Y.S.2d 732, 740 (N.Y. 2012); Greene v. Gerber Prod. Co., 262 F. Supp. 3d 38, 77 (E.D.N.Y. 2017). "If a plaintiff's other claims are defective . . . an unjust enrichment claim cannot remedy the defects." Id.

Here, Plaintiff's unjust-enrichment claim is duplicative of her other claims. Accordingly, the court grants Defendant's motion to dismiss Plaintiff's unjust-enrichment claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for dismissal of Plaintiff's second amended complaint (Dkt. 24) is GRANTED IN PART and DENIED IN PART.  Plaintiff's unjust-enrichment claim is dismissed and her breach of express warranty claim and her two NYGBL claims may proceed.  The court DISMISSES Plaintiff's prayer for injunctive relief for lack of standing.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      September 27, 2018

NICHOLAS G. GARAUFIS
United States District Judge